UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

INTERNATIONAL IMPORTERS, INC.,
a Florida Corporation,

Plaintiff,                                          CASE NO.: 10-61856-CV-AJ

vs.

INTERNATIONAL SPIRITS & WINES, LLC
a New York limited liability company,

and

D'AQUINO GROUP OF COMPANIES,
a business organized under the laws of Australia,

Defendants.
_____/

### DEFENDANTS' SUPPLEMENTAL MEMORANDUM
### IN SUPPORT OF MOTION TO DISMISS

#### INTRODUCTION

International Importers, Inc. ("Plaintiff") has come to this Court with a mere half interest in a registered trademark and is seeking to bring a case of trademark infringement. As Defendants stated in their Motion to Dismiss [D.E. 22], and argument before the Court, because all co-owners in a trademark are indispensible parties for purposes of Federal Rule of Civil Procedure 19, Plaintiff lacks standing to sustain such an action.

Plaintiff has done nothing to remedy its pleading deficiency. Instead, Plaintiff attempts to denigrate the interest of Maple Leaf Distillers, Inc. ("Maple Leaf")—Plaintiff's supposed co-owner in the Wallaby Creek trademark—through speculation and innuendo. Specifically, Plaintiff contends that Maple Leaf's 2006 bankruptcy resulted in a *de facto* abandonment of its

interest in the Wallaby Creek trademark. Thus, according to Plaintiff, there is simply no one left to join in this action.

Plaintiff is wrong. As discussed below, when Maple Leaf filed for bankruptcy in 2006, the company's remaining 25% interest in the Wallaby Creek trademark passed to the Australian company Fernbrew Pty Limited ("Fernbrew"). Thus, as the trademark sits today, Plaintiff's 50% co-owner is Fernbrew, a company that has been using the Wallaby Creek trademark continuously for the past 10 years. Accordingly, Fernbrew is the indispensible party in this case—not Maple Leaf—which render's Plaintiff's bankruptcy/abandonment argument completely academic.

## ARGUMENT

### I. The Wallaby Creek Trademark Chain of Title

The first issue the Court asked the parties to address in their supplemental briefing hones in on Plaintiff's abandonment argument and the potential impact Maple Leaf's bankruptcy might have had on the current ownership of the Wallaby Creek trademark. In an effort to answer the Court's inquiry, Defendants have provided further detail as to the chain of ownership of the Wallaby Creek trademark. This additional information confirms that the answer to the Court's question completely debunks Plaintiff's abandonment argument, and obviates the need for the Court to go any further.

In its Motion to Dismiss and argument before the Court, Defendants have shown that, at most, Plaintiff is an owner of a 50% share of the trademark registration for Wallaby Creek. *See* Trademark Assignment Abstract of Title from the United States Patent and Trademark Office ("Abstract of Title"), appended as Exhibit F to Plaintiff's Opposition to Defendants' Motion to Dismiss [D.E. 23-6]. As the Court observed, however, the Abstract of Title does not explain

what happened to Maple Leaf's 25% trademark interest in the wake of the company's 2006 bankruptcy.

In order to address this issue, Defendants submit herewith the declaration of Rex D'Aquino (the "D'Aquino Declaration" or "D'Aquino Dec.", attached hereto as Exhibit "A"). The D'Aquino Declaration explains the ownership history of the WALLABY CREEK trademark registration in great detail, and also references and incorporates the agreements underlying each of the four assignments reflected in the Abstract of Title.[1]

For example, the agreement underlying the 2004 assignment of the 25% interest in the trademark from Maple Leaf to Fernbrew (referred to in the Abstract of Title as "Assignment: 1") is attached to the D'Aquino Declaration as Exhibit RD3; the agreement underlying the 2005 assignment of A.V. Imports Inc.'s entire ownership interest in the trademark to Maple Leaf (referred to in the Abstract of Title as "Assignment: 2") is attached to the D'Aquino Declaration as Exhibit RD5; the agreement underlying the 2005 assignment of 50% of Maple Leaf's interest to New World Brands, Inc. ("New World Brands") (referred to in the Abstract of Tile as

---

[1] Although the pertinent documents in the chain of title appended to the D'Aquino Declaration are supported by the declaration itself, it also is proper for the Court to consider the recorded documents through judicial notice. A court may take judicial notice of public records to acknowledge the existence of the facts that are contained in those records. *See* Fed. R. Evid. 201(b)(2), (c). Public records include documents filed and maintained by the United States Patent and Trademark Office. *Kaempe v. Myers,* 367 F.2d 958, 965 (D.C. Cir. 2004) ("The documents recorded by the PTO are public records subject to judicial notice on a motion to dismiss."); *Island Software & Computer Serv., Inc. v. Microsoft Corp.,* 413 F.3d 257, 261 (2d Cir. 2005) ("(t)he district court was entitled to take judicial notice of Microsoft's federal copyright registrations, as published in the Copyright Office's registry."); *Vitek Sys., Inc. v. Abbott Labs.,* 675 F.2d 190, 192 n.4 (8th Cir. 1982) (court may take judicial notice of Patent and Trademark Office documents); *Total Petroleum Puerto Rico Corp. v. Torres Caraballo,* 672 F.Supp. 2d 252, 257 (D.P.R., 2009) ("(g)iven its status as an official United States agency website, I find that the USPTO website is a 'source whose accuracy cannot reasonably be questioned'."); *Welcome Co., Ltd. v. Harriet Carter Gifts, Inc.,* 1998 WL 1770584, *3 (C.D. Cal. Mar. 26, 1998) (taking judicial notice of Patent and Trademark Office notice of recordation assignment document).

"Assignment: 3") is attached to the D'Aquino Declaration as Exhibit RD6; and the agreement underlying the 2008 assignment of New World Brand's entire interest to Plaintiff, International Importers, Inc. (referred to in the Abstract of title as "Assignment: 4") is attached to the D'Aquino Declaration as Exhibit RD7.

As Mr. D'Aquino explains, the remaining 50% of the WALLABY CREEK U.S. trademark registration[2] is currently owned by Fernbrew. Fernbrew is the company in the D'Aquino Group of Companies that owns, and authorizes the use of, the intellectual property assets used in connection with goods produced and sold by other separate companies that also are part of the D'Aquino Group of Companies. D'Aquino Dec. ¶ 2. Fernbrew has continuously produced WALLABY CREEK brand wine, including all such wine that was sold by the Plaintiff. D'Aquino Dec. ¶¶ 3-4. That wine had been sold to Plaintiff by Highland Heritage Estate Sales Pty Ltd ("Highland Heritage"), a separate company that is under the umbrella of the D'Aquino Group. D'Aquino Dec. ¶ 5; *see also* Weber Dec. ¶ 7.

Initially, wine bearing the trademark WALLABY CREEK was imported into the United States by A.V. Imports, Inc. ("A.V. Imports"). D'Aquino Dec. ¶ 5. Later, by way of letter dated April 1, 2005, Highland Heritage stated the appointment of Plaintiff, International Importers, Inc., as the distributor of Australian wines bearing the trade mark WALLABY CREEK in the United States. D'Aquino Dec. ¶6, Exhibit RD1. Today, the exclusive importer is Defendant, International Spirits & Wines, LLC. D'Aquino Dec. ¶ 7. Plaintiff no longer sells WALLABY CREEK wine. *Id.*

---

[2] Fernbrew's ownership interest in the U.S. trademark is consistent with its ownership interest in the trademark registrations in other countries where WALLABY CREEK wine sold. *See* D'Aquino Dec. ¶ 9, Exhibit RD2.

4

In 2002, the first distributor, A.V. Imports, filed the application which led to the registration of the trademark that is the subject of this case. Even though it was not at that time an owner of record, it was subsequently agreed that Fernbrew would have an equitable interest in the trademark. D'Aquino Dec. ¶¶10-11. Fernbrew's interest in the Registration was memorialized in a document dated May 4, 2004. D'Aquino Dec. ¶¶10-11, Exhibit RD3. Although this document was signed in 2004, it was forward-looking in effect. The document shows how the rights in the Registration were agreed to be apportioned effective when Plaintiff's predecessor, New World Brands, was appointed as the U.S. distributor for WALLABY CREEK wine. These trademark rights were assigned to Maple Leaf,[3] who further assigned 50% of the rights to New World Brands. *See* D'Aquino Dec ¶12, Exhibit RD4, also dated May 4, 2004.

Thus, when New World Brands was appointed distributor, and in accordance with Exhibit RD3, New World Brands acquired a 50% ownership interest in the trademark;[4] 25% of the ownership share vested in Fernbrew; and the remaining 25% was retained by Maple Leaf Distillers.

In 2006, Maple Leaf Distillers went into bankruptcy. *See* D'Aquino Dec. ¶12, Exhibit RD2, which includes an extract from the Canadian Bankruptcy and Insolvency Records. The Court may take judicial notice of the bankruptcy from this official record.

---

[3] *See* D'Aquino Dec. ¶14, Exhibit RD5.
[4] *See* D'Aquino Dec. ¶15, Exhibit RD6, the assignment document between Maple Leaf and New World Brands which is titled "Assignment of 50% of Trademark".

In accordance with an agreement dated May 4, 2004 between Maple Leaf and Rex D'Aquino (on behalf of Fernbrew), upon Maple Leaf's insolvency, Maple Leaf's remaining 25% interest in the trademark registration vested in Fernbrew.[5] *See* D'Aquino Dec., ¶13, Exhibit RD3 ("**In the event that any one of the companies mentioned above becomes insolvent** or unable to fulfill our agreement (ie. sales and marketing of the products), **the trademark will revert to Fernbrew Pty Limited Corporation ownership**.") (emphasis added). Thus, after Maple Leaf's bankruptcy, Fernbrew's ownership share in the Wallaby Creek trademark grew from 25% to 50%.[6]

Finally, in a document dated October 31, 2008, New World Brands acknowledged the assignment of its 50% share of interest in the trademark registration to International Imports, Inc. Significantly, this document expressly acknowledges that the interest owned by New World Brands in the Registration was only "50%". D'Aquino Dec. ¶12, Exhibit RD7.

---

[5] Plaintiff has presented no evidence refuting this fact. The closest Plaintiff has come to addressing the ownership of Maple Leaf's 25% interest in the Wallaby Creek trademark post-bankruptcy is in the declaration of its Chief Financial Officer, Mark Weber. Mr. Weber states that he "believe[s] that at least some of Maple Leaf Distillers, Inc.'s assets were sold to Angostura North America, Inc. ["Angostura"], a Canadian corporation." Declaration of Mark Weber at 2 [DE 23-4]. Mr. Weber does not claim, however, that the specific trademark registration at issue here—the WALLABY CREEK trademark—was among those assets sold to Angostura. Nor has Plaintiff sought to join Angostura as a party to this action. These omissions are for good reason. The assignment of trademarks from Maple Leaf to Angostura confirms that rights in the WALLABY CREEK trademark were **not** included among the assets transferred. *See* Assignment of Trademarks recorded at Reel 3530, Frame 0621, D'Aquino Dec. ¶¶,18-19 Exhibit RD9.

[6] Even if Fernbrew had not received this additional 25% ownership share, it would still be a necessary party to this action because of the 25% share it already owned.

6

The following chart shows the ownership history of the Wallaby Creek trademark:



Thus, today the Plaintiff purports to own a 50% ownership interest in the trademark registration for WALLABY CREEK. The remaining 50% interest is owned by Fernbrew, a company that has been using the WALLABY CREEK trademark continuously for the past 10 years.

**II.     Plaintiff's Bankruptcy/Abandonment Argument is Moot Because Fernbrew, Plaintiff's 50% Co-Owner in the Trademark, Is an Indispensible Party in this Action**

In its effort to eliminate the interest of its co-owners, Plaintiff cites to the bankruptcy of Maple Leaf to support a theory of abandonment. As discussed above, however, Maple Leaf's bankruptcy is of no moment because it is not a current co-owner in the Wallaby Creek trademark. Plaintiff's abandonment argument therefore fails from the outset.

7

Indeed, in view of Fernbrew's 50% ownership interest in the trademark, in order for Plaintiff to maintain its infringement action, Fernbrew must agree to join this case as a plaintiff.[7] *See Marrero Enterprises of Palm Beach, Inc. v. Estefan Enterprises, Inc.*, No. 06-81036-CIV, 2007 WL 4218990, at *2 (S.D. Fla. Nov. 29, 2007) ("[a]n owner/licensor or [sic] of a trademark is, pursuant Rule 19, required as a necessary party in actions concerning those rights"). Fernbrew has not done so. Nor can Fernbrew be forced to do so. *See Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998) (holding in a patent case that, "all coowners must ordinarily consent to join as plaintiff in an infringement suit" and recognizing that, as a result of this rule, one co-owner even has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit).

Because Plaintiff has not, and cannot, cure this defect, its complaint should be dismissed pursuant to Rule 19.

### III. Even if Maple Leaf's Bankruptcy Were Relevant to the Indispensible Party Determination—Which It Is Not—Plaintiff's Abandonment Argument Fails as a Matter of Law

As discussed above, the current ownership interest in the Wallaby Creek trademark ends the Court's inquiry for purposes of the indispensible party analysis that is the subject of Defendants' Motion to Dismiss. However, in light of the Court's question regarding the impact of use or non-use of a trademark on a registrant's ownership rights, Defendants will briefly address the law on trademark abandonment.

---

[7] As a company that can be considered as one of the D'Aquino Group of Companies, it is unclear exactly which corporations Plaintiff is seeking to sue, and if Fernbrew is intended to be a party Defendant. *See* Defendants' pending Motion to Dismiss [D.E. 22]. This underscores the problem with Plaintiff's pleading which names a non-incorporated loosely affiliated "group" of companies as one single defendant. Moreover, as a trademark co-owner, Fernbrew could not be a proper defendant in a trademark infringement action. Nor would the court have jurisdiction over Fernbrew, as it has not done business in Florida.

As a threshold matter, Plaintiff's contention that Maple Leaf's bankruptcy resulted in an automatic abandonment of its ownership interest in the trademark is incorrect. Even if a bankrupt party is the sole owner of a trademark and stops using a trademark, it does not mean that the trademark has been abandoned. *See e.g., EH Yacht, LLC v. Egg Harbor LLC*, 84 F. Supp.2d 556 (D.N.J. 2000) (the abandonment inquiry "will take into account the intentions of [the trademark owner's] creditors to validly resume use of the name within a reasonable time following Marine's closure."). Here, where Maple Leaf has made its intention to pass its interest in the Wallaby Creek trademark to Fernbrew upon its insolvency explicitly clear, the absence of any intent to abandon the trademark cannot be seriously questioned. *See* D'Aquino Dec. ¶13, Exhibit RD3.

Moreover, Section 1127 of the Trademark Act states:

> "A **mark** shall be deemed to be 'abandoned' . . . When its use has been discontinued with intent not to resume such use.

15 U.S.C. §1127 (emphasis added). The abandonment determination thus hinges on whether or not the trademark itself is in use or is not in use. Whether the use is by one co-owner, both co-owners or neither[8] is irrelevant. All of the abandonment cases cited by Plaintiff involve situations where there was a complete discontinuance of use of the trademark. That certainly is not the case here, where the WALLABY CREEK product has never been off the market.

---

[8] For example, in the common situation where a trademark is licensed, it may be used only by a licensee and not the trademark owner. Such use is sufficient to maintain the mark in force. *See* 15 U.S.C. § 1055 ("Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public"); *see also Restatement Third, Unfair Competition § 33*, comment b (1995) ("If the trademark owner exercises reasonable control over the nature and quality of the licensee's goods or services, the benefits of the licensee's use accrue to the trademark owner.") Or, one co-owner may be a "silent partner" who does not itself make use of the trademark.

9

Indeed, Fernbrew, the 50% co-owner, has been using the WALLABY CREEK trademark and producing wine for the last ten years. D'Aquino Dec. ¶¶5, 8. Thus, Plaintiff's attempt to draw an artificial distinction between rights gained through use of a mark on the one hand, and rights gains through a registration of a trademark on the other, has no bearing on this case. While use of a trademark can give rise to trademark rights, a registration indicates who is entitled to use the mark. When dealing with a registered mark, the right to use a trademark flows from the ownership of a registration. Section 1115(b) of the Trademark Act provides that a trademark registration is:

> prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive **right to use the registered mark in commerce** on or in connection with the goods or services specified in the registration. . . ."

15 U.S.C. §1115(b) (emphasis added). Accordingly, Fernbrew's ownership interest in the registration gives it the right to use the trademark, and to continue to sell WALLABY CREEK wine. On the record before the Court, therefore, there is no basis to conclude that there was a discontinuance of use of the WALLABY CREEK trademark with intent not to resume such use.

## CONCLUSION

Plaintiff has not established its standing to bring this action for trademark infringement. Plaintiff does not represent the entire interest in the trademark at issue and cannot prosecute this action on its own. Plaintiff also has failed to name or properly serve the purported Australian defendant. Therefore, the Plaintiffs' Motion to Dismiss should be granted in all respects.

Dated: May 16, 2011.

        Respectfully submitted,

        **BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
        *Attorneys for Defendants International Spirits & Wines, LLC and D'Aquino Group of Companies*
        1450 Brickell Ave, Suite 2300
        Miami, Florida 33131
        Tel.: (305) 374-7580
        Fax: (305) 374-7593

        *-and-*

        Joseph D. Lewis, Esq.
        **BARNES & THORNBURG, LLP**
        *Attorneys for Defendants International Spirits & Wines, LLC and D'Aquino Group of Companies*
        1717 Pennsylvania Avenue, NW, Suite 500
        Washington, District Of Columbia 20006-4623
        Tel: (202) 289-1313
        Fax: (202) 289-1330

BY:   */s/ Mitchell E. Widom*
        MITCHELL E. WIDOM
        Florida Bar No. 473911
        mwidom@bilzin.com
        LORI P. LUSTRIN
        Florida Bar No. 59228
        llustrin@bilzin.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 16th day of May, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.


By: /s/ *Mitchell E. Widom*
Mitchell E. Widom